# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER T. OLIVER,<br><br>Plaintiff,<br><br>vs.<br><br>IRON WORKERS UNION LOCAL 229 et al.,<br><br>Defendants. | CASE NO. 17-cv-1-LAB (MDD)<br><br>**ORDER PARTIALLY GRANTING MOTIONS TO DISMISS** |

Ironworker Sylvester Oliver sums up the heart of his case this way: "Mr. Oliver does not believe that he deserves any special treatment and he does not begrudge the callous treatment that is doled out on job sites, as life as an iron worker is not easy—but it does not stand that it should be made more difficult by unions and employers that engage in illegal retaliation with impunity." The Court agrees. Taking Oliver's allegations as true, and drawing all inferences in his favor, he's stated a retaliation and hostile work environment claim against Iron Workers Union Local 229 and a retaliation claim against SME Steel.

**I.    Pleading**

SME Steel argues it can't defend this action because Oliver's amended allegations collectively refer to SME and the Union. It's true the Court instructed Oliver to be more specific in describing how SME and the Union violated his rights. He's done so. His amended complaint provides both defendants fair notice that Oliver believes they colluded to blacklist him from working because he speaks up to oppose unlawful employment

practices. His detailed complaint identifies specific people, places, and dates. That's sufficient. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514–16 (2002) (reversing discrimination dismissal because more specific facts not necessary).

**II.    The Union**

   **A.    Title VII**

To state a claim for retaliation, Oliver needs to allege "he undertook a protected activity under Title VII, his employer subjected him to an adverse employment action, and there is a causal link between those two events." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 693 (9th Cir. 2017). Oliver filed at least two EEOC charges against his Union for two adverse actions: (1) refusing to refer him to SME's San Ysidro job three times from July to August 2013; and (2) firing him from SME's San Clemente job in September 2014.[1]

   **1.    San Ysidro**

Oliver alleges Cesar Cabrera, one of the Union's business agents, intentionally failed to refer him to the San Ysidro job because of his history of complaints. Oliver's alleged a string of protected activity: complaints made to Cabrera about gender discrimination on SME's Courthouse site in 2010; complaints lodged with Cabrera after Oliver was fired from Borrego Springs after complaining about use of the N-word in 2012; complaints about the selection and treatment of black workers at SME's Library site in 2011 and 2012; and filing an NLRB complaint against the Union and SME in July 2013.[2] The Union contends most of this protected activity happened too long ago to infer it prompted Cabrera to retaliate against Oliver in the summer of 2013. The Court disagrees.

The Union relies on *Aloha Island* where the Ninth Circuit explained, "in some cases, causation can be inferred from timing alone." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

---

[1] Oliver's amended EEOC complaint also alleged the Union failed to refer him for work almost a year after San Clemente. That's likely an adverse action as well, but Oliver didn't plead it in his amended complaint.

[2] It doesn't matter that some of this activity occurred before January 2013 because "the statute of limitations runs from the time of the alleged retaliatory act—not from the alleged protected activity." *Pruitt v. Genentech*, 2017 WL 3641783, at *2 (E.D. Cal. Aug. 24, 2017).

1054, 1065 (9th Cir. 2002). But Oliver isn't alleging timing alone—he's laid out circumstantial evidence that corroborates his causation argument. For example, a few months after complaining to Cabrera about the N-word firing, Oliver says Cabrera prompted Brandon Gates to file formal charges calling for Oliver's removal as a Union Trustee. And only a few months after Gates's charges, Cabrera confronted Oliver for speaking up at the Hiring Hall, and filed his own charges against Oliver. At the pleading stage, Oliver's protected activity, combined with these allegations against Cabrera, offers plenty of "circumstantial evidence of a pattern of antagonism following the protected conduct." *Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005) (reversing because enough to show causation for retaliation claim).

### 2. San Clemente

The Union also argues Oliver can't state a retaliation claim for San Clemente because the Union didn't do anything wrong. But Oliver alleges the Union acted in partnership with SME by "calling him to a faraway job site with the intention of immediately sending him home" and then dispatching "another bolt-up worker" to take his place. In support, Oliver points out SME fired him on a Monday with a reimbursement check post-dated from Friday. The Court agrees with Oliver: It's not a stretch to infer someone at the Union, like Cabrera, spoke with someone at San Clemente and arranged to fire Oliver for his past complaints.

The Union again argues Oliver's protected activity is too remote. That argument fails for the same reasons outlined above. Plus, Oliver filed an EEOC complaint against the Union in late 2013 that provides additional protected activity to suggest San Clemente was retaliatory. Oliver may uncover more evidence he doesn't have access to now—emails, text messages, deposition testimony—that support his claims. But at the pleading stage, he doesn't have that information. Here, the Court can't say the time gap is too long as a matter of law. The motion to dismiss Oliver's Title VII retaliation claim against the Union is **denied**.

### B. Section 1981

A "union, entrusted with the enforcement of a labor contract, may violate" § 1981 "if by racial discrimination it interferes with its members' ability to enforce their contract." *Woods*

*v. Graphic Commc'ns*, 925 F.2d 1195, 1202–03 (9th Cir. 1991). Oliver alleges the Union interfered with his ability to obtain work under the collective bargaining agreement with SME because he filed complaints about racial issues on SME sites and in the Hiring Hall. The Court finds his retaliation and hostile work environment claims are "cognizable under § 1981." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 801 (9th Cir. 2003).

### 1. Retaliation

Courts generally analyze Title VII and § 1981 claims the same, and "facts sufficient to give rise to a Title VII claim are also sufficient for a section 1981 claim." *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir. 1987). Since Oliver's alleged a Title VII retaliation action for San Ysidro and San Clemente, those same facts support his § 1981 claim. But Oliver has also plausibly alleged Cabrera took adverse actions by filing charges against Oliver in July 2013 and directing Gates to file charges in February 2013.

The Union argues these incidents don't count because they turn on union politics—not Oliver's complaints. That's disingenuous at best. When read as a whole, the complaint is clear: Cabrera had it out for Oliver because he filed complaints, and one way he retaliated, among others, was by filing charges. The Gates and Cabrera charges count as adverse actions since they would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 56 (2006). The motion to dismiss this claim is **denied**.

### 2. Hostile Work Environment

"A hostile work environment interferes with the enjoyment of all benefits and conditions of the contractual relationship of employment and is therefore actionable under § 1981." *Manatt*, 339 F.3d at 797. Oliver must allege the Union subjected him to unwelcome verbal or physical conduct because of his race and it was sufficiently severe so as to create an abusive work environment. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (reversing trial court for tossing hostile work environment claim at the motion to dismiss stage). Oliver has met that burden.

/ / /

For example, he's alleged multiple instances of Union conduct that flow from his complaints about racial discrimination: from Cabrera "physically invading Mr. Oliver's personal space" and asking the invective rhetorical "who the fuck do you think you are?"; to Juan Galvan putting "his face within inches of Mr. Oliver's face and yell[ing] at Mr. Oliver to 'get out of my hall.'"[3] Oliver's sufficiently alleged that these incidents, and others, taken together were "part of the same actionable hostile environment claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120-21 (2002). The motion to dismiss this claim is **denied**. *See Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (reversing where supervisors called plaintiff a "troublemaker" and told him to "shut up"); *Woods*, 925 F.2d at 1202 (9th Cir. 1991) (union members created hostile environment).[4]

### 3. Discrimination

*Goodman v. Lukens Steel* suggests union workers could bring discrimination claims for violations of a collective bargaining agreement under § 1981 as early as 1987. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662 (1987). Since that cause of action was available before Congress created a four-year federal catch-all statute of limitations in 1990, the Court must apply California's two-year statute of limitations to Oliver's discrimination claims. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044 (9th Cir. 2008). That means Oliver must identify adverse actions the Union took against him after January 2015. He hasn't. His opposition alludes to possible adverse actions that triggered NLRB complaints in March 2015, July 2015, and January 2016. But Oliver didn't discuss those charges in his complaint, offer any details on what precipitated those charges, or explain how the Union treated him worse than other workers because he's black. This claim is **dismissed with leave to amend**.

---

[3] Oliver's opposition suggests other support, like Brandon Gates "screaming in his face in front of the assembled union hall 'I can't stand mother fuckers who file paper work.'"

[4] The Union argues the incidents Oliver mentions are too sporadic citing *Manatt* and *Wilborn v. Ashcroft*, 222 F. Supp. 2d 1192 (S.D. Cal. 2002). But both summary judgment cases are distinguished by their procedural posture alone.

### C. National Labor Relations Act

Oliver may have a fair representation claim against his Union for failing to file grievances against SME. *See e.g.*, *Woods*, 925 F.2d at 1203–06 (9th Cir. 1991). But any suit against a union alleging a fair representation violation must be brought within six months of the violation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983). That means Oliver needs to point to fair representation violations that occurred after June 2016. He hasn't. This claim is **dismissed with leave to amend**.[5]

## III. SME

### A. Title VII

SME argues Oliver's Title VII claim is untimely. Under Title VII, if a litigant fails to file suit within 90 days of a right-to-sue letter, his action is time-barred. *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1121 (9th Cir. 2007). Oliver estimates he received the right-to-sue notice on October 1, 2016. Since he filed this action on January 3, 2017, he missed the 90-day window. Although it's a ticky-tack rule, the Court is bound to follow Ninth Circuit precedent. *Id.* (affirming where Title VII suit filed three days late).

Oliver argues he's entitled to equitable tolling. Equitable tolling applies "when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). Oliver's pending FOIA inquiry, and his reliance on a right-to-sue notice issued for claims against the Union, aren't extraordinary circumstances. This claim is **dismissed without leave to amend**.

### B. Section 1981

#### 1. Retaliation

Oliver stated a § 1981 retaliation claim against SME for interfering with his ability to obtain work at San Ysidro and San Clemente under the collective bargaining agreement. Oliver plausibly alleged the Union and SME jointly decide who gets work. For example, Oliver alleges "union leadership was able to manipulate [the hiring] system by feeding names to the contractors and instruct[ing] the contractors to call out the specific names, as

---

[5] SME doesn't have a duty of fair representation. *Bowen v. U.S. Postal*, 459 U.S. 212 (1983).

this facilitated a means to bypass the established protocols for fair and impartial job calls." He also says Union "leadership provided SME with copies of every grievance brought by Mr. Oliver against the employer" and that "SME is also responsible for their supervisory staff who are dispatched from Union Local 229 [and] harbor negative feeling towards Mr. Oliver based on the information fed to them by Union Local 229 leadership." SME's letter to the EEOC tends to confirm these allegations by demonstrating its detailed awareness of Oliver's history of complaints:

> Oliver has a long track record of filing meritless complaints. He has filed numerous union grievances—indeed, he attempted to form his own union of black ironworkers until he was enjoined by the Ironworkers. He has also filed prior unsuccessful complaints with the Office of Federal Contract Compliance. Invariably, Mr. Oliver asserts that his employers are racially biased or have failed to include the correct number of black workers on their projects.

Since SME coordinates with the Union to decide who gets work, and SME is well-aware of Oliver's history of racial complaints, Oliver has plausibly alleged that SME is on the hook for retaliation as well. As discussed, there's plenty of circumstantial evidence to support the causal connection between Oliver's protected activity and his allegation SME played a part in denying Oliver work on the San Ysidro and San Clemente sites.[6]

SME raises several objections. First, it argues the San Ysidro and San Clemente adverse actions occurred outside the two-year statute of limitations under *Lukovsky v. San Francisco*. But *Lukovsky* involved a discrimination claim; not a retaliation claim. And "section 1981 retaliation claims are governed by the four-year statute of limitations under § 1658." *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1003 (9th Cir. 2011). *Goodman* suggests a discrimination claim was available, but a retaliation claim under § 1981 wasn't recognized until 2008. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008).

---

[6] Even if Oliver's allegations weren't sufficient to allege stand-alone retaliation against SME, he's also plausibly alleged a conspiracy to retaliate based on "the unconstitutional actions" of the Union. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012); *see Gilbrook v. City of Westminster*, 177 F.3d 839, 857 (9th Cir. 1999) (affirming verdict finding defendants conspired to retaliate against union members).

Second, SME says it had nothing to do with San Ysidro—Oliver's beef is with Hensel Phelps Construction. But Oliver specifically alleges Hensel Phleps Construction "was running the job site in partnership with SME." The company also says Oliver's San Ysidro claims don't relate back to the original complaint because it "made no reference to San Ysidro." That's wrong.[7]

Third, SME argues Oliver's EEOC charge states SME fired him "because there was no work available"; not because of his complaints. SME takes that statement out-of-context. Oliver wrote down SME's proffered excuse for firing him in the EEOC charge—that doesn't contradict his amended complaint's allegation that the excuse was bogus. SME also points out Oliver's charge said the Union was responsible for the firing. But that doesn't mean SME wasn't also responsible. Of course it was. SME did the firing. The motion to dismiss Oliver's § 1981 retaliation claim against SME is **denied**.[8]

### 2. Hostile Work Environment

Oliver's alleged a number of SME job sites that could form the basis for a hostile work environment claim using the continuing violation doctrine. *See, e.g.*, *Molina v. Los Angeles Cty., Dep't of Mental Health,* 58 F. App'x 311 (9th Cir. 2003). But he hasn't pointed to any conduct that occurred at an SME jobsite after January 2013 that qualifies. This claim is **dismissed with leave to amend**.

### 3. Discrimination

Oliver's discrimination claims against SME fail for the same reasons his claims against the Union fail: he hasn't alleged discriminatory conduct that took place after January 2015. This claim is **dismissed with leave to amend.**

/ / /

/ / /

---

[7] *See* Dkt. 1 ¶¶ 11, 16, 17; Dkt. 1-8 at 28–29.

[8] SME also suggests Oliver failed to plead the existence of a contract. But Oliver discussed the CBA throughout his complaint; the Union attaches the CBA; and SME's letter to the EEOC—describing how it fired Oliver from San Clemente with "contractually agreed travel and turnaround pay"—belies SME's claim.

## IV. State Claims

Oliver's amended complaint added a number of state claims, but he failed to address arguments against them in his opposition, and some were only in the caption of his amended complaint. These claims are deemed abandoned, but **dismissed with leave to amend**. *See, e.g.*, *Shull v. Ocwen Loan Servicing,* 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014).

* * *

Defendants urge the Court to deny leave to amend because Oliver's already had one chance to fix his complaint. But "a district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). Given this liberal policy, and his pro se status, Oliver may file an amended complaint as discussed above, but only if he can fix the problems identified by the Defendants and Court. He need not do so immediately. Instead, the parties should begin the discovery process in earnest for the live federal claims, and Oliver may seek leave to file an amended complaint at a later date in accordance with the scheduling order issued by the magistrate judge.

**IT IS SO ORDERED**.

Dated: July 6, 2018

_____
**HONORABLE LARRY ALAN BURNS**
United States District Judge