# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER T. OLIVER,<br><br>          Plaintiff,<br><br>vs.<br><br>IRON WORKERS UNION LOCAL 229, et al.,<br><br>          Defendants. | CASE NO. 17-cv-1-LAB (MDD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [Dkts. 67, 68]** |

After retaining counsel in this workplace discrimination and retaliation suit, Plaintiff Sylvester Oliver filed a Third Amended Complaint ("TAC"). Now before the Court are motions to dismiss by Iron Workers Union Local 229 ("the Union") and the two SME entities (together, "SME"). Dkts. 67, 68. For the reasons below, those motions are **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

This case is more than two years old and Oliver is now on his Third Amended Complaint ("TAC")—needless to say, the parties are familiar with the facts. The gist of this case is that Oliver, an African-American ironworker, claims he was the subject of retaliation and racial discrimination at the hands of two steel contractors and his own union. According to Oliver, the Defendants routinely denied him the opportunity to work

on new construction projects based on his history of filing administrative complaints and his reputation as a "troublemaker."

In October 2017, the Court dismissed Oliver's initial complaint, finding that his allegations were insufficient to state a claim for relief. Dkt. 20. Oliver then filed an amended complaint, which Defendants again moved to dismiss. The Court partially granted Defendants' motion, dismissing most of the claims but finding that Oliver had stated a claim for hostile work environment against the Union and for retaliation against both sets of Defendants. Dkt. 40. Not content to proceed on those claims alone, Oliver—who had to that point represented himself pro se—hired an attorney and filed a 77-page second amended complaint that contained a laundry list of eleven different causes of action. Dkt. 64. In an effort to avoid further motion practice, the parties stipulated to Oliver withdrawing his second amended complaint so that he could file a shorter complaint with a narrower focus. Dkt. 65. The result is Oliver's current pleading: a 56-page TAC with four causes of action: (1) Title VII retaliation against the Union; (2) Section 1981 retaliation against both sets of Defendants; (3) Section 1981 discrimination against the Union; and (4) Section 1981 hostile work environment against the Union. *See* TAC, Dkt. 66.

## **DISCUSSION**

Defendants jointly move to dismiss the TAC in its entirety, arguing that it violates Rule 8's requirement of a short and plain statement. In the alternative, they argue, portions of Oliver's TAC should be dismissed for failure to state a claim under Rule 12(b)(6).

**1.    Rule 8**

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). In certain situations, the Ninth Circuit has held that Rule 41(b) permits a court to dismiss a complaint that violates Rule 8's requirements. *See, e.g., Van Poppenheim v. Portland Boxing & Wrestling Comm'n*, 442 F.2d 1047, 1049, 1053 (9th Cir. 1971). Dismissal may be appropriate, for

example, where the complaint fails "to advise defendants sufficiently of the basis of [the] claim[s]" because it is unnecessarily "prolix, confused and obscure." *Id.* at 1049. But dismissal in such circumstances is a "harsh remedy," so the court should generally adopt "less drastic alternatives" if possible. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

It is certainly true that Oliver's TAC is long and contains extraneous information—for example, while the Court appreciates a good story, a history on the evolution of medieval trade guilds is of no practical use in a race discrimination suit. *See* TAC at ¶¶ 32-33. At the end of the day, though, these literary flourishes are as harmless as they are unnecessary. Apart from being forced to slog through the 56-page complaint, the only concrete harm the Defendants have identified is that certain causes of action are directed towards only one party and yet contain references to other parties, thus leading to confusion as to whether the second party should have been named or whether Oliver is attributing the second party's actions to the first.[1] While this is not ideal, it is also not uncommon. Even in the modern age of plausibility pleading, complaints are often subject to some degree of ambiguity before discovery begins. The ambiguity here does not warrant wholesale dismissal, especially in light of the Court's prior determination that Oliver has plausibly pled at least some of his claims. Further, as discussed below, portions of Oliver's TAC are subject to dismissal, which should help to narrow the scope of the claims Defendants must defend. Defendants' motion to dismiss the TAC in its entirety is **DENIED.**

**2.    Failure to State a Claim**

Defendants ague that even if Oliver's complaint survives the Rule 8 challenge, certain portions should still be dismissed for failure to state a claim under Rule 12(b)(6).

---

[1] In Oliver's second cause of action, for example, Defendants claim that the complaint capitalizes the names of the business manager and business agent as if they are parties, even though they are not. *See* TAC at ¶¶ 108-09. Likewise, in his third cause of action, Oliver makes allegations about Local 441, a union that is not a party to this case. *Id.* at ¶¶ 130.

Specifically, the Union argues that Oliver (1) failed to exhaust administrative remedies as to certain portions of his Title VII claim; (2) fails to state a Section 1981 claim for retaliation in connection with certain work projects; (3) fails to state a Section 1981 claim for a hostile work environment; and (4) fails to state a Section 1981 claim for discrimination. SME moves to dismiss portions of the one cause of action in which it is named—Oliver's claim for retaliation under Section 1981.

    a.    **The Union**

           i.    **Title VII**

The Court previously allowed to go forward Oliver's claims for Title VII retaliation as to the San Ysidro and San Clemente job projects, both of which were alleged in his EEOC charges. Oliver's TAC, however, contains new allegations of retaliation related to several projects that were not raised in his prior complaints nor his EEOC charges, such as the San Diego Central Public Library ("Library"), the Carter/Keep United States Courthouse ("Courthouse"), the UCSD Altman Clinical and Translational Research Institute[2] ("Research Institute"), the LA Stadium, the Solar Gen 2 Calipatria ("Calipatria"), and the Herrick Kaiser Hospital ("Kaiser Hospital") projects. *See* TAC at ¶ 7, 72-78, 95, 122. The Union argues that these claims must be dismissed because Oliver did not administratively exhaust his remedies as to these instances of retaliation and is now time-barred from doing so.

In Title VII cases, district courts may only hear claims related to charges alleged in the administrative action, or conduct that is "like or reasonably related to" the charges described in the administrative allegations. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896–97 (9th Cir. 2001). "This standard is met where the allegations in the civil suit are within the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 897 (citation and internal quotation marks

---

[2] This project is alternatively referred to as "UCSD Clinical Research Facility and Jacobs Hospital" and "UCSD Altman Clinical and Translational Research Institute." *Compare* TAC ¶ 7 *with* TAC ¶ 122. The Court assumes these references are to the same project.

omitted). In assessing the relatedness of claims, district courts construe EEOC charges "with the utmost liberality . . . ." *Yamaguchi v. United States Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997).

Oliver's EEOC charges here referenced only retaliation related to the San Ysidro project from July 2, 2013 through August 8, 2013 and the San Clemente project on September 8, 2014. *See* Dkt. 1-8 at 60, 85-86. The charges did not specifically reference any of the new projects Oliver now lists in his TAC, nor retaliation related to the San Ysidro and San Clemente projects that occurred after 2014.

As to the projects that were referenced for the first time in Oliver's TAC, the Court concludes that these allegations are not "reasonably related" to the EEOC charges and are therefore subject to dismissal. This is especially true because, according to the TAC, many of these projects began before Oliver filed his EEOC charges: the Library project began in 2010, the Courthouse project began in 2009, and the Research Institute project began in 2014. *See* TAC at ¶ 7. Had Oliver intended for these instances of retaliation to be considered by the EEOC, he could have listed them in his charges. Accordingly, any Title VII allegations of retaliation related to projects other than San Ysidro and San Clemente are **DISMISSED** for failure to exhaust administrative remedies.

But Oliver is not, as the Union would have it, precluded from alleging Title VII retaliation related to the San Ysidro and San Clemente projects that occurred *after* he filed his charges. Oliver specifically checked the box labeled "continuing action" on his EEOC charges. *See* Dkt. 1-8 at 86. Had the EEOC conducted an investigation into San Ysidro/San Clemente retaliation, an investigation into subsequent retaliation "would reasonably be expected to grow out of the charge." *Rodriguez*, 265 F.3d at 897. To that extent, the Union's Motion is **DENIED**.

In short, Oliver's Title VII claims are limited to retaliation related to the San Ysidro and San Clemente projects. In proving Title VII retaliation, however, he may rely on instances of retaliation related to those projects that occurred after he filed his EEOC charges.

ii. **Section 1981 Retaliation**

The Union next argues that allegations of retaliation related to projects other than the San Ysidro and San Clemente projects are insufficiently pled and therefore cannot form the basis of Oliver's Section 1981 claim. Courts generally analyze Title VII and Section 1981 claims the same, and "facts sufficient to give rise to a Title VII claim are also sufficient for a section 1981 claim." *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir. 1987). Unlike Title VII claims, though, Section 1981 claims are not subject to administrative exhaustion, so the Court must look to the merits of the claims, not whether they were raised in the EEOC charges.

The Union says Oliver's TAC is deficient as to the Library, Courthouse, and Research Institute projects because the TAC only alleges that Oliver was "eligible for dispatch to work on" those projects and was not ultimately dispatched. According to the Union, this does not plausibly support an inference of retaliation. The Court agrees. Especially contrasted with the detailed description Oliver provides regarding retaliation vis-à-vis the San Ysidro and San Clemente projects, the threadbare allegation that he was "eligible for dispatch to work on" these other projects does not survive muster. The same is true with his allegations as to the LA Stadium project – Oliver alleges that he was "prevented from being dispatched to the SME LA stadium job that a number of [Union] members worked on," but does not plead any other facts that would support an inference that he was deliberately passed over for this project in retaliation for filing complaints. Accordingly, his Section 1981 retaliation claim as related to those projects is **DISMISSED**.[3]

The Union also argues that Oliver's allegations of retaliation related to the Kaiser Hospital project are insufficient because he does not adequately demonstrate that it was the Union who took adverse action against him, as opposed to the contractor who fired

---

[3] For the same reasons, Oliver's Section 1981 retaliation claims against SME are **DISMISSED** to the extent they are predicated on these projects. Oliver may proceed with his claims against SME related to the San Ysidro and San Clemente projects.

him. Here, however, the Court disagrees. Oliver's TAC describes how Cesar Cabrera, the Union's Business Agent who routinely retaliated against Oliver for filing "paperwork," appointed his cousin Humberto Olmos as the job steward for the Kaiser Hospital project. Oliver also describes conversations on the jobsite between himself and Olmos, in which the two discuss Cabrera's dislike of Oliver and the need for Oliver to get along with Cabrera. In light of these facts, it is plausible that the foreman's subsequent decision to terminate Oliver from that project was directly related to pressure from Cabrera and, by extension, the Union. The Union's motion is **DENIED** with respect to this project, and Oliver may proceed with his Section 1981 retaliation claim as related to the San Ysidro, San Clemente, Kaiser Hospital, and Calipatria[4] projects. As noted in the Court's previous Order, Oliver may also rely on the charges filed against him by Cabrera and Brandon Gates as "adverse actions" giving rise to a Section 1981 retaliation claim. *See* Dkt. 40 at 4.

iii. **Section 1981 Hostile Work Environment Claim**

The Union next argues that even if Oliver has stated a claim for retaliation, he has not adequately alleged that this retaliation had anything to do with his race, and so his hostile work environment claim must be dismissed. The Court previously rejected this same argument, explaining: "[Oliver] alleged multiple instances of Union conduct that flow from his complaints about racial discrimination: from Cabrera 'physically invading Mr. Oliver's personal space' and asking the invective rhetorical 'who the fuck do you think you are?'; to Juan Galvan putting 'his face within inches of Mr. Oliver's face and yell[ing] at Mr. Oliver to "get out of my hall."' Oliver's sufficiently alleged that these incidents, and others, taken together were 'part of the same actionable hostile environment claim.' *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120-21 (2002)." Like before, the Union's motion to dismiss these claims is **DENIED.**

---

[4] The Union does not address the sufficiency of Oliver's allegations related to the Calipatria project, but the Court finds that his allegations related to this project are sufficient to state a claim.

iv. **Section 1981 Discrimination Claim**

Finally, the Union moves to dismiss Oliver's Section 1981 discrimination claim in its entirety. The Court previously dismissed this same claim without prejudice, noting that unlike his other Section 1981 causes of action, claims of discrimination under Section 1981 are subject to a two-year statute of limitations and that Oliver had failed to specifically plead discriminatory acts that took place in the two years leading up to this lawsuit. He still hasn't done this. The Court even offered Oliver guidance on how he might plead such discrimination, pointing out that he claims to have filed complaints with the NLRB on three occasions in 2015 and 2016—if he could provide the Court with the facts underlying those complaints, he might be able to plead actionable discrimination that occurred within the statute of limitations. He didn't do that, so this claim is **DISMISSED.**

## **CONCLUSION**

For the reasons above, Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**. Oliver may proceed with: (1) his Title VII retaliation claim as related to the San Ysidro and San Clemente projects; (2) his Section 1981 retaliation claim as related to the San Ysidro, San Clemente, Kaiser Hospital, and Calipatria projects; and (3) his Section 1981 hostile work environment claim. His Third Cause of Action for Section 1981 discrimination is **DISMISSED WITH PREJUDICE**, as are his other claims to the extent they are predicated on projects other than San Ysidro, San Clemente, Kaiser Hospital, and Calipatria.

By **February 15, 2019**, the parties should inform Magistrate Judge Michael Berg if an additional settlement conference would be helpful before discovery begins.[5]

---

[5] A Mandatory Settlement Conference is currently scheduled for May 15, 2019. That will remain on the calendar. The Court is simply offering the parties an additional conference prior to discovery if it would help avoid the costs of discovery and expedite the resolution of this case.

Otherwise, given how long this case has been pending, the parties should immediately proceed to discovery. The Court anticipates trial will be held by the end of 2019.

**IT IS SO ORDERED**.

Dated: February 8, 2019

*Larry A. Burns*
**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge